UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-24217-BB

DEBBIE AND RICHARD GUZMAN,

    Plaintiffs,

v.

SCOTTSDALE INSURANCE
COMPANY,

    Defendant.
_____/

**DEFENDANT, SCOTTSDALE INSURANCE COMPANY'S
STATEMENT OF MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), files this Statement of Material Facts in support of its contemporaneously-filed Motion for Final Summary Judgment:

1. This is a first-party breach of contract action brought by Plaintiffs, Debbie and Richard Guzman, on September 9, 2020. *See* D.E. 1-A, Complaint.

2. Plaintiffs allege in the Complaint that Scottsdale breached a dwelling policy of insurance, policy number DFS1248729, insuring Plaintiffs' residential property located at 11831 SW 97th Ave., Miami, Florida 33176 (the "Property"), by failing to issue payment for Plaintiffs' alleged Hurricane Irma loss, to which Scottsdale assigned claim number 01954155. *Id.* at ¶¶ 4, 5, 8, 12, 15.

3. Scottsdale was served with Plaintiffs' Complaint on September 15, 2020, and timely removed the action to this Court on October 15, 2020 based upon the Court's diversity jurisdiction. *See*, D.E. 1, Notice of Removal.

4. The alleged date of loss underlying Plaintiffs' suit is September 10, 2017. *See* D.E. 1-A, Comp., ¶ 5.

5. The dwelling policy that is the subject of Plaintiffs' suit bears Policy Number DFS1248729 (the "Policy") and was issued to the Plaintiffs for the policy period from May 16, 2017 to May 16, 2018. A true and correct copy of the Policy is attached as Exhibit 1 to the Declaration of Cindy Sarver, attached hereto as **Exhibit "A."**

6. Scottsdale was first notified of the Plaintiffs' loss on April 19, 2020, which is over two years and seven months after the alleged date of loss, by Adrian Cepero, the Insureds' Public Adjuster. *See* Deposition of Chris Logan, attached hereto as **Exhibit "B,"** at 15:9-15.

7. Thereafter, Scottsdale issued a claim number, 01954155, to the loss. *Id.* at 15:2, 16:2-6.

8. On April 21, 2020, Scottsdale sent the Insureds and the Insureds' public adjuster a reservation of rights letter ("the Reservation of Rights"), reserving rights under the "Duties After Loss" Condition of the Policy and the "Concealment Or Fraud" Condition of the Policy. *See* Ex. A, Sarver Dec., at ¶ 5 and Ex. 2.

9. The Reservation of Rights letter further stated that because the claim was not reported until April 19, 2020, two and a half years after the storm, Scottsdale did not know if any repairs were completed since the date of loss and/or whether all damages claimed are related to this event or occurred during the policy period. *See* Ex. A, Sarver Dec., at Ex. 2.

10. The Policy requires the insureds to provide Scottsdale with "prompt notice" of any loss to the Property:

> **D. Duties After Loss**
>
> **In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you or your representative:**
>
> **1. Give prompt notice to us or our agent;**
>
> \* \* \*

See, Ex. A, Policy, Form DP 00 03 12 02, pg. 9 of 13.

11. The Policy further provides that no action can be brought against Scottsdale unless there has been full compliance with all of the terms under this Policy. *See* Ex. A, Policy, Form DP 00 03 12 02, pg. 11 of 13.

12. The Policy states that it "applies only to loss which occurs during the policy period." *See id.* at pg. 9 of 13.

13. During the deposition of Richard Guzman ("Mr. Guzman") on August 4, 2021, Mr. Guzman testified he first observed damage to the Property "during the Hurricane" when the roof "started leaking droplets." *See* Deposition of Richard Guzman, attached hereto as **"Exhibit "C,"** at 10:15-23.

14. Mr. Guzman further testified he had never noticed water leaking through the roof in that spot or in any other room in the house prior to the hurricane. *Id.* at 12:18-24.

15. Mr. Guzman testified he patched the leak with something that "looks like concrete" that you put "on top of the ceiling, but it didn't work. It was short. After the rain it just started leaking again. So we just left it like that." *Id.* at 15:6, 16-20.

16. During the deposition of Debbie Guzman ("Ms. Guzman") on August 4, 2021, Ms. Guzman testified that the same roof present on the Property in September of 2017 when Hurricane Irma passed through South Florida was the roof that was put on in 1996. *See* Deposition of Debbie Guzman, attached hereto as **"Exhibit D,"** at 8:6-15.

17. Ms. Guzman testified that she updated the kitchen of the Property in January 2018, replacing the countertops, cabinets, and refrigerator but not the flooring. *Id.* at 12:6-8, 13:17-23.

18. Ms. Guzman testified the repairs within the kitchen were completed on or about March of 2018. *Id.* at 63:25, 64:1-4.

19. Ms. Guzman testified the reason she replaced the kitchen cabinets was due to warping caused by the leak from Hurricane Irma. *Id.* at 64:10-13.

20. Ms. Guzman testified someone named Cesar Trinidad was called to fix the persistent leak and that he fixed (or temporarily fixed) the roof in September of 2018. *Id.* at 30:19-25, 31:1-25.

21. Ms. Guzman testified that Adrian Cepero, the public adjuster, came out to the Property on April 18, 2020 and then Enviropro came to install the humidifiers and mold detection machines on that same date. *Id.* at 39:4-20.

22. Ms. Guzman testified that besides the kitchen repair renovation done in January of 2018 and the roof work done by the roofer, Mr. Trinidad, in September of 2018, no other repairs of hurricane damage were done to the home. *Id.* at 36:6-10.

23. Ms. Guzman testified she never did anything [about reporting the claim], other than call her insurance agent, Super Insurance Services, and tried to repair what she could, because she was under the impression she had to pay $20,000 out of pocket even though she had insurance. *Id.* at 29:19-24, 30:4-6.

24. Scottsdale retained an independent adjuster, Daniel Zambrano, from Mid-America Catastrophe Services, who inspected the loss on April 29, 2020. *See* Ex. B, Logan Dep. at 17:2-9, 17:18-20.

25. The independent adjuster reported to Nationwide that he did not see wind damages to the roof but did see some areas of cracks and damages that appeared to be from wear and tear and foot traffic, along with some water damage observed to the interior walls and ceilings in the kitchen, dining room, living room and hallway. *Id.* at 17:21-25, 18:1-8.

26. Thereafter, Scottsdale retained a structural engineer, Nazario Ramirez ("Mr. Ramirez") of Donan Engineering, who inspected the Property on August 7, 2020 and August 10, 2020. *Id.* at 18: 14-25, 19:1-5, 19:13-17.

27. The structural engineer testified that he was able to determine whether the Property was damaged due to Hurricane Irma relying on a combination of factors during the inspection to reach a final conclusion, which included four photographs provided to him by the Insured, aerial photography, and weather-related research. *See* Deposition of Nazario Ramirez, attached hereto as **"Exhibit E,"** at 51:1-25, 52:1-13.

28. The structural engineer, Mr. Ramirez, concluded that with the exception of three rake cap tiles, the roof covering was not damaged as a result of winds or wind-borne debris from Hurricane Irma, but rather was damaged as a result of foot traffic, sandbags, and/or restrained thermal movement. *Id.* at 46:7-25.

29. Mr. Ramirez observed roof repairs performed after Hurricane Irma, which he identified as portions of sealant applied throughout the clay tiled area of the roof, specifically at cracked tile locations and under some of the clay tiles, along the bottom portion of the clay tiles, and on the top portion of the underlying clay tile that was observed. *Id.* at 33:10-20.

30. Mr. Ramirez requested information from the Insureds, including invoices, reports, photographs, anything related to reported repairs after the Hurricane, but the only things provided to him were four photographs. *Id.* at 33:21-25, 34: 8-12.

31. Mr. Ramirez further opined rain water entering the roofing structure and staining the ceiling of the kitchen was because the underlayment has failed, which could be caused by age and deterioration or improper construction. Id. at 25:6-25, 26:1-7.

32. Although the structural engineer who inspected the Property was able to provide opinions on the causes of observed damages to the roof at the Property, Scottsdale was prejudiced in its investigation of the loss because had a timely inspection occurred shortly after the hurricane, different conclusions may have been reached. *See* Ex. B, Logan Dep. at 27:17-25, 28-1-5.

33. Damage to the interior of the Property may have increased between September 10, 2017 and April 20, 2020 when the claim was first reported to Scottsdale because this was a long-term roof leak and each time there was a storm or rain, it could have leaked and made the damages more severe. *Id*. at 31:20-25, 32:1-4.

34. The roof did, in fact, continue leaking, even after repairs were completed by the Insureds. *See* Ex. D, D. Guzman Dep. at 34:20-22.

35. Damage to the interior of the Property could not be viewed as it was at the time of the loss because in January 2018, the countertops, cabinets, and refrigerator in the kitchen were all replaced. *Id.* at 12:6-8, 13:17-23.

36. Specifically, when Scottsdale's independent adjuster and structural engineer inspected the Property in 2020, the kitchen was not in the same condition as it was and did not have the same components as existed right after Hurricane Irma in September of 2017 because the

Insureds had replaced the kitchen at the time of the inspections for the claim. *See* Ex. B, Logan Dep. at 32:14-19.

37. The estimate provided by the Insureds' public adjuster in support of their claim for damages from the hurricane includes approximately $20,000 in costs to remove and replace the kitchen cabinets and countertops, although these components were not present at the time of Scottsdale's inspections of the Property. *Id.* at 32:5-25, 33:1-19.

38. Ms. Guzman testified that the cabinets, appliances and countertops in the kitchen, which they replaced in early 2018, are not damaged at present. *See* Ex. D, D. Guzman Dep. at 46:9-25, 47:1-16.

39. Ms. Guzman confirmed in her deposition that the amount stated the Plaintiffs' Sworn Statement in Proof of Loss of $244,141.09 before the wind deductible, is the amount they are seeking to recover from Scottsdale in this suit for Hurricane Irma damage to the Property. *See id.* at 44:23-25, 45:1-12, and Ex. 5.

40. Scottsdale was not able to view the damages as they existed right after the hurricane in September of 2017. *See* Ex. B, Logan Dep. at 32:8-11.

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Patricia A. McLean*
Patricia A. McLean, Esq., Fla. Bar #129143
100 South Ashley Drive, Suite 2000
Tampa, Florida  33602
Tel.:  (813) 472-7550 / Facsimile:  (813) 472-7570
Email:  mcleanp@phelps.com

***Attorneys for Defendant, Scottsdale Insurance Company***

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on October 1, 2021, I filed the foregoing with the clerk of court using the CM/ECF system, which will send an electronic copy to all counsel of record.

                                                        */s/ Patricia A. McLean*
                                                        Attorney

PD.35487451.1