UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-24217-BLOOM/Otazo-Reyes

DEBBIE AND RICHARD GUZMAN,

    Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
_____/

**ORDER ON MOTION FOR FINAL SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Scottsdale Insurance Company's ("Scottsdale") Motion for Final Summary Judgment, ECF No. [19] (the "Motion"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, including the Response, ECF No. [25], and Reply, ECF No. [28], the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

**I.     BACKGROUND**

This diversity action concerns a first-party breach of contract claim by Plaintiffs Debbie Guzman ("Ms. Guzman") and Richard Guzman ("Mr. Guzman") (collectively, "Plaintiffs") against their insurer, Scottsdale, under a residential insurance policy (the "Policy"). ECF No. [1-2]. Plaintiffs alleged that on September 10, 2017, Hurricane Irma damaged the roof of their home (the "Property"). *Id.* at 8 ¶ 5. Plaintiffs' sworn proof of loss asserted damages of $244,141.09. ECF No. [1-4] at 19. As its third affirmative defense, Scottsdale contends that Plaintiffs forfeited coverage by not reporting the claim until April 19, 2020—a delay of more than 31 months. ECF No. [1-2] at 18. The only issue on summary judgment is whether Plaintiffs have rebutted the

presumption of prejudice to Scottsdale from the late notice.

## II. MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.[1]

### A. Relevant Policy Language and Notice of Claim

The Policy was in effect between May 2017 and May 2018. ECF No. [18-1] at 11. The Policy sets forth Plaintiffs' "Duties After Loss" as follows:

> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you or your representative:
>
> 1. Give prompt notice to us or our agent[.]

*Id.* at 46.

Plaintiffs' alleged date of loss is September 10, 2017. ECF No. [1-4] at 19. Mr. Guzman testified that he first observed water leaking into the kitchen from the roof during Hurricane Irma. ECF No. [18-3] at 10–11. But Plaintiffs first notified Scottsdale of their claim on April 19, 2020. ECF No. [18-2] at 17.

### B. Intervening Repairs and Renovations

Mr. Guzman tried to fix the leak by applying a concrete-like substance on the ceiling but gave up when leaks continued. ECF No. [18-3] at 15. In January 2018, Ms. Guzman began replacing the kitchen countertops, cabinets, and refrigerator due to water damage. ECF No. [18-4] at 12–13, 63. The kitchen repairs were completed about three months later. *Id.* at 63–64. The

---

[1] Scottsdale filed a Statement of Material Facts in Support of Summary Judgment, ECF No. [18], Plaintiffs filed a Response to Statement of Material Facts and Counter Statement of Disputed Facts, ECF No. [26], and Scottsdale filed a Reply to Plaintiffs' Statement of Additional Facts, ECF No. [27].

estimate from Plaintiffs' public adjuster included the cost of removing and replacing kitchen cabinets and countertops, even though the damaged cabinets and countertops were not available for inspection. ECF No. [18-2] at 32–33.

In September 2018, Ms. Guzman hired an individual to fix the leak. ECF No. [18-4] at 31–32. He "temporarily" did so; leaks continued at some point after that. *Id.* at 31, 34–35. Indeed, after Hurricane Irma, the roof would leak every time it rained. ECF No. [18-3] at 14. No other repairs for hurricane damage were done. ECF No. [18-4] at 36.

### C.     Engineering Opinions

Scottdale retained structural engineer Nazario Ramirez ("Ramirez"), who inspected the Property on August 7, 2020, and August 10, 2020. ECF No. [18-2] at 20. Plaintiffs provided Ramirez with four photographs of the repairs; no other information was given. ECF No. [18-5] at 34–35. Still, Ramirez denied being prejudiced during his two inspections, despite the passage of time. *Id.* at 50–51. Ramirez testified that based on the pictures, aerial photography, and weather research, he reached a "final conclusion." *Id.* at 52–53.

Ramirez concluded that Hurricane Irma did not damage the roof except for three missing rake cap tiles. *Id.* at 47. Ramirez further opined that water intrusion into the kitchen was caused by the "underlayment" failing, which may result from age and deterioration or poor construction. *Id.* at 25–26, 58. Lastly, Ramirez testified that, according to aerial photographs, the modified bitumen membrane roof over part of the Property was altered in 2018. *Id.* at 41.

Plaintiffs hired engineer Freddy Andrade ("Andrade"), who inspected the Property on May 7, 2021. ECF No. [26-1] at 3. Andrade observed broken, cracked, and displaced tiles; a damaged roof system; and moisture intrusion into the home, all of which were, in his opinion, consistent with damage from high winds or wind-blown debris. *Id.* at 3–5. Andrade further observed dark

stains in the attic, indicative of a long-term leak that, in his view, likely originated from Hurricane Irma. *Id.* at 5. Finally, Andrade opined that an investigation immediately after Irma would not have made a material difference because, as shown in satellite imagery, the roof has not been replaced or changed significantly since Irma. *Id.* at 4.

### D. Scottsdale's Corporate Representative

Scottsdale's corporate representative, Christopher Logan (Logan), admitted that their structural engineer, Ramirez, could determine the cause of damage to the roof. ECF No. [18-2] at 28. Nonetheless, Logan maintained that Scottsdale was prejudiced by the late claim notice because had Ramirez inspected the roof earlier, "maybe he would've had different conclusions." *Id.* at 29. Logan further conceded that Ramirez did not state in his report that he was prejudiced by the passage of time. *Id.* at 30.

## III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's]

position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be

inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion.

**IV.    DISCUSSION**

Florida law governs this first-party insurance dispute. *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1220 (11th Cir. 2015). Under Florida law, "failure to give timely notice under [an insurance policy] is a legal basis for the denial of recovery under the policy." *Laquer v. Citizens Prop. Ins. Corp.*, 167 So. 3d 470, 473 (Fla. 3d DCA 2015) (internal quotation mark omitted). "Where the notice is untimely, prejudice to the insurer is presumed, but this presumption is rebuttable." *Rodriguez v. Avatar Prop. & Cas. Ins. Co.*, 290 So. 3d 560, 564 (Fla. 2d DCA 2020).

The burden falls on the insured to show that the insured's late notice did not prejudice the insurer. *1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 544 (Fla. 3d DCA 2013). Whether an insured has rebutted the presumption is generally an issue of fact unless "the record . . . conclusively foreclose[s] the insured's ability to overcome the presumption [of prejudice]." *De La Rosa v. Florida Peninsula Ins. Co.*, 246 So. 3d 438, 441 (Fla. 4th DCA 2018) (cleaned up).

Plaintiffs concede that they did not provide Scottsdale with timely notice. ECF No. [25] at 8.[2] But Plaintiffs submit that a genuine issue of material fact remains as to prejudice. *Id.* at 13. Specifically, Plaintiffs rely on Ramirez's deposition testimony that he was not prejudiced in reaching his determinations. ECF No. [26] at ¶ 32. Based on that admission, the Court agrees that the remains a factual dispute as to prejudice. *See Alina Montenegro Happy Dreams Learning Center v. Nautilus Ins. Co.*, No. 20-24323-CIV, 2021 WL 4991099, at *5 (S.D. Fla. Oct. 7, 2021) (finding that there was a genuine issue of material fact as to prejudice, despite three-year delay and repeated attempts to repair roof, where insurer's engineer did not "note any difficulty in her inspection or an inability to make a determination based on the proximity of the claimed date of loss, Hurricane Irma, and the inspection"); *see also Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co., Ltd.*, 10-24310-CIV, 2012 WL 266438, at *5–6 (S.D. Fla. Jan. 30, 2012) (finding same, despite "strong inference" of prejudice from the record, where experts did not express difficulty in reaching conclusions).

Here, the record presents facts from which a jury may or may not determine that Scottsdale was prejudiced. It is undisputed that Plaintiffs (1) first noticed the leak in their kitchen during

---

[2] "Florida cases involving notice provisions similar to the one here have held that a six-month or less period is considered late notice." *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 849 (11th Cir. 2014).

Hurricane Irma in September 2017; (2) attempted an unsuccessful do-it-yourself patch job; (3) replaced kitchen countertops, cabinets, and appliances from January 2018 to March 2018; (4) hired someone to repair the roof in September 2018, without success; and (5) did not report the loss until April 2020. *See* ECF Nos. [18-2] at 17, [18-3] at 10–11, [18-4] at 12–13, 31–35, 63–64. The 2018 roof repair is consistent with Ramirez's observation that the modified bitumen membrane roof over part of the Property was altered that year. ECF No. [18-2] at 41. It is also undisputed that, after Hurricane Irma, the roof leaked every time it rained. ECF No. [18-3] at 14. And Plaintiffs' engineer observed that there were "multiple years of moisture intrusion" after Irma. ECF No. [26-1] at 5.

But Scottsdale's own expert, Ramirez, denied being prejudiced during his two inspections. ECF No. [18-5] at 50–51. Ramirez was retained to opine on "cause of the damages as well as the scope of the damages." ECF No. [18-2] at 18. He was able to reach a "final conclusion" based on pictures, aerial photography, and weather research. *Id.* at 52–53. His determinations were that Hurricane Irma did not damage the roof except for three missing rake cap tiles, and that any water intrusion resulted from a failed underlayment, which results from age or poor construction. *Id.* at 25–26, 47, 58. A genuine issue of material facts exists and the court cannot weigh the conflicting evidence of prejudice on summary judgment. *Skop*, 485 F.3d at 1140. Accordingly, summary judgment on Scottsdale's third affirmative defense is inappropriate.

**V.     CONCLUSION**

For the foregoing reasons, Defendant's Motion, **ECF No. [19]**, is **DENIED**.

Case No. 20-cv-24217-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 15, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record